**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**BARTON PROTECTIVE SERVICES, INC., Defendant.**

**No. Civ.A.98–1536 (JR).**

United States District Court, District of Columbia.

May 25, 1999.

Diane Bradley, U.S. Equal Employment, Opportunity Commission, Washington, DC, for plaintiff.

Deborah P. Kelly, Jorge Kotelanski, Dickstein Shapiro Morin & Oshinsky LLP, Washington, DC, for defendant.

## MEMORANDUM

ROBERTSON, District Judge.

This memorandum sets forth the Court's reasoning for granting defendant's motion for summary judgment on May 9, 1999. This suit was filed by the Equal Employment Opportunity Employment Commis-sion on behalf of Glynda Baptist, a former employee at defendant Barton Protective Services. EEOC asserted that Ms. Baptist had been sexually harassed while working at Barton. Barton denied the harassment but also interposed the affirmative defense recognized in *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)—that Barton exercised reasonable care in trying to prevent and correct harassment, and that Baptist acted unreasonably by waiting more than eleven months to report the harassment. The grant of summary judgment assumed for the sake of argument that the complained-of harassment happened, but concluded that the affirmative defense succeeded as a matter of law.

### FACTS

The following facts were either undisputed or were assumed to be true for purposes of the Court's ruling: Glynda Baptist began working as a security guard for defendant Barton Protective Services in May 1995. She was assigned to work at Lafayette Center in Washington, D.C. On April 20, 1995, before beginning her job, she received and signed a copy of Barton's written Sexual Harassment Policy on April 20, 1995. The policy stated, "An employee alleging either harassment by anyone with supervisory authority, or failure by a supervisor to take immediate action on the individual's complaint of being sexually harassed by another employee should file a written and detailed complaint immediately." (Def.Ex. 6 & 9). She also received a copy of Barton's Security Officer's Training Manual. That manual stated,

"Should ... you ever become dissatisfied with [your supervisors'] treatment of you, you may file a formal complaint by submitting a letter through your Account Manager to your Branch Manager. If the complaint is about the Account Manager, you may file the com-

plaint directly to the Branch Manager. Should you feel dissatisfied with the Branch Manager's action, you may file directly to the Corporate Personnel Manager." (Def.Ex.11).

Beginning on Ms. Baptist's first day of work in mid-May 1995, Troy Williams, the account manager at Lafayette Center, sexually harassed her on a daily basis. She did not report the harassment or complain about it until, eleven months later, in late-April 1996, she mentioned it to Basim Muhammad, her newly-appointed shift supervisor (who was subordinate to Mr. Williams). Mr. Muhammad confronted Mr. Williams that same day, and he denied the harassment. On June 4, 1996, Ms. Baptist for the first time told one of Mr. Williams' supervisors, Carl Box, the operations manager, about the harassment. That same day, Mr. Box changed Mr. Williams' schedule, pending investigation of the complaint, and he offered Ms. Baptist a transfer, which she declined. The next day, Barton offered Ms. Baptist leave with pay pending investigation of her complaint, and this offer she accepted. Two days later, on June 7, 1996, Ms. Baptist contacted Barton and asked to return to work.

Ms. Baptist did return to work on June 10, 1996. On that day, she met with Mr. Box, with Todd Carroll, Vice President, and with Jennifer Cavanaugh, Payroll Manager. After five or ten minutes, she felt "ambushed" by the meeting. She told Messrs. Box and Carol and Ms. Cavanaugh that she would prefer to speak with an attorney present. That same day, Roger Reed, Human Resources Manager, wrote to Ms. Baptist's lawyer asking for Ms. Baptist's cooperation in the investigation of her complaint. On June 11, Ms. Baptist resigned.

Ms. Baptist filed a timely complaint of discrimination with the EEOC alleging that she had been harassed by Mr. Williams and that Barton maintained a hostile work environment. She asserted that she had been constructively dis-charged in violation of Section 703(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The EEOC conducted an investigation and filed this lawsuit on June 30, 1998. On March 21, 1999, defendant moved for summary judgment.

## ANALYSIS

■ An employer may be held vicariously liable for a supervisor's sexual harassment of an employee, but "[w]hen no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence . . . ." *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 2270, 141 L.Ed.2d 633 (1998). "The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Burlington,* 118 S.Ct. at 2270.

The first question that must be addressed is whether a "tangible employment action" occurred here. EEOC asserts that Ms. Baptist was constructively discharged and that a constructive discharge, like any discharge, is a tangible employment action. The initial appeal of that argument turns out, upon closer inspection in the context of this case, to be superficial.

■ "[A] constructive discharge occurs where the employer creates or tolerates discriminatory working conditions that would drive a reasonable person to resign." *Katradis v. Dav–El of Washington, D.C.,* 846 F.2d 1482, 1485 ·(D.C.Cir. 1988) (quotations and citation omitted). It is not clear whether Ms. Baptist's claim of constructive discharge focuses on the eleven months of harassment or the "ambush" meeting that was the apparent trigger of

her decision to resign. Assigning the labels of "constructive discharge" and "tangible employment action" to either set of facts, however, would make nonsense of the *Burlington* affirmative defense. If Barton may successfully defend by showing that Ms. Baptist unreasonably waited eleven months before telling anyone at work about the harassment, it makes no sense to permit the same eleven months of harassment to neutralize the defense. And, if Barton may successfully defend by showing that Ms. Baptist unreasonably failed to take advantage of a corrective opportunity, it makes no sense to permit that defense to be neutralized by her dissatisfaction with that opportunity, repackaged as "constructive discharge" and then as "tangible employment action."[1] In the context of this case, Ms. Baptist's claim of constructive discharge thus would not amount to a tangible employment action even if proven.

■ Turning then to the merits of the two-element affirmative defense outlined in *Burlington* : The first element is the employer's exercise of reasonable care to prevent and correct promptly any sexually harassing behavior. It is undisputed that Barton had two policies in place to prevent discrimination, and that Ms. Baptist received and signed the Sexual Harassment Policy and the Security Officer Training Manual. It is further undisputed that Barton provided additional EEO training for its managers and distributed written materials on how to prevent sexual harassment.

EEOC asserts, however, that Barton failed to exercise reasonable care to prevent sexual harassment because it did not investigate rumors that Mr. Williams and Ms. Baptist were dating, and because it condoned sexual jokes and ogling of non-Barton employees in the workplace. Neither assertion gives rise to a genuine issue of material fact. Rumors of dating (if they were in circulation) gave rise to no duty of investigation. Barton's sexual harassment policy in effect at the time did not prohibit dating between employees, *see* Def.Ex. 6. In any event, sexual harassment consists of unwelcome sexual conduct, not dating. As for jokes, there is no evidence that Ms. Baptist—or any other Barton employee—complained about jokes or found them to be offensive. "[I]f the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993).[2]

EEOC also asserts that Barton's *policy* is inadequate for two asserted reasons: it "does not provide specifically for an alternate route for complaining when the harasser is the first or second line supervisor" and "the demand that the complaint be immediate and in writing unreasonably puts limitations on invoking the remedies of the policy and thus condones or encourages harassment" (Pltf.Mem. at 23). The first assertion · is simply false. Barton's Employee Handbook states, "If the complaint is about the Account Manager, you may file the complaint directly to the

---

1. The proper way to attack an employer's "corrective opportunities" is to show that they were a sham, or that the employee's failure to take advantage of them was *not* unreasonable. EEOC has done neither.

2. When EEOC was unable to produce a witness to "ogling," it sought discovery well beyond acceptable boundaries in an effort to make the charge stick. More than a month after the close of discovery, EEOC moved to compel the disclosure of the names, addresses, and phone numbers of every female em-

ployee ever supervised by Mr. Williams over a five-year period. *See* Pl.Mot. to Compel, March 19, 1999. The motion was supported by the argument that EEOC wanted to search for evidence of "ogling." Defendant objected that none of the sixteen depositions taken by plaintiff showed any evidence of "ogling." *See* Def.Opp. to Mot. to Compel, April 12, 1999. The Court's grant of summary judgment in favor of defendant necessarily implies a denial of plaintiff's motion to compel.

Branch Manager." (Def.Ex. 11 at 8.) The second assertion—that it is unreasonable to require an employee complaint to be in writing—is irrelevant: Ms. Baptist never put her complaint in writing, and yet Barton acted upon it immediately.

By instituting a sexual harassment policy and distributing it to every new employee, including Ms. Baptist, before her first day of work, Barton exercised reasonable care to prevent harassment. *See Marsicano v. American Society of Safety Eng'eers,* No. 97–C7819, 1998 WL 603128, at *7 (N.D.Ill. Sept.4, 1998); *Montero v. AGCO Corp.,* 19 F.Supp.2d 1143, 1146 (E.D.Ca. 1998); *Romero v. Caribbean Restaurants, Inc.,* 14 F.Supp.2d 185, 191 (D.P.R.1998); *Fierro v. Saks Fifth Ave.,* 13 F.Supp.2d 481, 491 (S.D.N.Y.1998) (all finding the first element of the *Burlington* affirmative defense satisfied by undisputed proof that the employer had an anti-harassment policy).

Barton's reasonable effort steps to *correct* the harassing behavior is established by the undisputed fact that, on the same day Ms. Butler first complained of harassment to a supervisor, an investigation was launched, Ms. Butler was offered a transfer (which she declined), and the harasser's schedule was changed pending the investigation.

The second element of the *Burlington* affirmative defense requires proof that "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Burlington,* 118 S.Ct. at 2270. A demonstration that the employee unreasonably failed "to use any complaint procedure provided by the employer ... will normally suffice to satisfy the employer's burden under the second element of the defense." *Faragher,* 118 S.Ct. at 2293. EEOC's assertion that Ms. Baptist tried to avoid harassment by asking her boyfriend to visit her at work is unpersuasive and certainly does not raise a genuine issue as to the reasonableness of Ms. Baptist's ac-

tions. Ms. Baptist never testified that she asked her boyfriend to visit her at work, and, even if she had, telling her boyfriend about the harassment does not relieve her of the duty to follow Barton's procedure to report harassment. It is undisputed that Ms. Baptist waited eleven months before telling anyone at Barton about the harassment, although the harassment allegedly began on her first day of work and occurred on a daily basis thereafter, and that she waited more than a year before telling the harasser's supervisors. "[A]s a matter of law, a reasonable person in [Baptist's] place would have come forward early enough to prevent [Williams'] harassment from becoming 'severe or pervasive.'" *Greene v. Dalton,* 164 F.3d 671, 675 (D.C.Cir.1999).

There were no genuine issues of material fact, and Barton was entitled to judgment as a matter of law on its *Burlington* affirmative defense.