**Christie SCOTT, Plaintiff,**

v.

**AMERITEX YARN, Defendant.**

**No. 7:99–173–20AK.**

United States District Court, D. South Carolina, Spartanburg Division.

Nov. 19, 1999.

---

7. Plaintiff has also abandoned this claim by failing to argue it on summary judgment.

Brian Murphy, Greenville, SC, for Plaintiff.

Lovic A. Brooks, III, Kristine L. Thompson, Nicole P. Cantey, Columbia, SC, for Defendant.

## ORDER

HERLONG, District Judge.

■ This matter is before the court with the Report and Recommendation of the United States Magistrate Judge, made in accordance with 28 U.S.C. § 636(b)(1)(a) and Local Rule 73.02(B)(2)(g), DSC.[1] The plaintiff, Christie Scott ("Scott"), filed this action against her employer, Ameritex Yarn ("Ameritex"), alleging harassment and constructive discharge on the basis of sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). On August 24, 1999, Ameritex moved for summary judgment. In his Report and Recommendation, United States Magistrate Judge William M. Catoe, Jr. recommends denying summary judgment. Ameritex objects to the recommendation, and the court reviews the issues de novo. For the reasons stated below, the court grants Ameritex's motion for summary judgment in part and denies it in part.

### I. STATEMENT OF THE FACTS

In June 1998, Ameritex purchased a plant in Spartanburg from Delta Woodside that had been closed since April 1998. Ameritex hired many of Delta Woodside's former employees and management. Mickey Brown ("Brown"), the plant supervisor, hired Scott in June 1998. Scott alleges that Brown began harassing her in July 1998. Over the next five months, Brown's testimony reveals that he asked Scott out on five to seven occasions; told Scott he wanted to have sex with her on three occasions; offered her a loan on one occasion; called her at home on five or six occasions; blew her a kiss on one occasion; stood in her way on six or seven occasions; told her his "hormones were raging" on one occasion; inquired as to whether her husband was home on six to eight occasions; told her to call him if she was lonely on one occasion; told her he had a crush on her on one occasion; told her she was pretty on five or six occasions; told her the frequency he had sex with his wife on four or five occasions; and asked her how often she had sex with her husband on four or five occasions.

Although Brown admits only to somewhere between forty-three and fifty-two incidents, Scott alleges that Brown's advances and comments occurred on an almost daily basis over the five-month period. She claims that she repeatedly declined Brown's advances and asked him to stop. In addition, Scott claims that Brown's actions upset her, affected her ability to perform her job, caused her to cry on several occasions, and resulted in her withdrawing from her children and husband. After five months of the alleged harassment, Scott quit her job with Ameritex. Upon receiving a right-to-sue letter from the EEOC, Scott filed suit on January 19, 1999.

### II. DISCUSSION OF THE LAW

#### A. Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to

---

1. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. See Mathews v. Weber, 423 U.S. 261, 270, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter to him with instructions. See 28 U.S.C. § 636(b)(1).

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in her favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## B. Ameritex's Objections—Hostile Environment and Constructive Discharge

The magistrate judge recommends denying summary judgment on the basis that there are genuine issues of material fact with respect to Scott's hostile working environment claim. Ameritex objects to this conclusion. Ameritex also objects to the magistrate judge's failure to address Scott's constructive discharge claim. The court will consider *de novo* Ameritex's motion for summary judgment and thereby address Ameritex's objections.

Title VII makes it unlawful for "an employer ... [to] discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). The Supreme Court has set forth two overarching inquiries to guide the court's analysis. First, there is the threshold question of whether there was actionable discrimination in violation of Title VII. *See Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 753, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). Second, there is the question of whether the employer may be held vicariously liable for the discrimination. *See id.* at 754, 118 S.Ct. 2257. Scott asserts two bases of liability under the threshold inquiry: hostile working environment and constructive discharge. The outcome under the threshold inquiry dramatically affects the analysis under the step-two inquiry. The court will analyze each basis of liability in turn.

### 1. Hostile Working Environment

#### a. Threshold Inquiry—Existence of Title VII Discrimination

Scott claims that she was subjected to a sexually hostile environment in violation of Title VII. Federal courts have always viewed the workplace environment as a "term, condition, or privilege of employment." *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Thus, the Supreme Court has held that sexual harassment so "severe or pervasive" as to "'alter the conditions of [the victim's] employment and create an abusive working environment'" violates Title VII. *Id.* at 67, 106 S.Ct. 2399 (quoting *Henson v. Dundee,* 682 F.2d 897, 904 (11th Cir.1982)). Such a violation is dubbed a hostile working environment.

To demonstrate a hostile working environment, Scott must show that Brown's conduct was: (1) unwelcome; (2) based on Scott's sex; and (3) sufficiently severe or pervasive to create an abusive working environment that was both objectively and subjectively hostile or offensive. *See Brown v. Perry,* 184 F.3d 388, 393 (4th Cir.1999). Scott is able to survive summary judgment by presenting evidence that creates a genuine issue of material fact under each of these three elements.

### i. Unwelcome Conduct

This element is met when the conduct continues after the employee sufficiently communicates that the alleged sexual advances are unwelcome. *Meritor,* 477 U.S. at 68–69, 106 S.Ct. 2399. Although Ameritex disputes that the conduct was unwelcome, Ameritex concedes that Scott has presented a genuine issue of material fact with respect to unwelcomeness. (Def.'s Mem.Supp.Mot.Summ.J. at 10 n. 3.)

**592**

## ii. Based on Sex

Ameritex does not dispute that Brown's conduct was based upon Scott's sex. (*Id.*)

### iii. Severe and Pervasive

■ A hostile workplace environment is sufficiently severe and pervasive "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (internal quotations and citations omitted). It must be both subjectively and objectively abusive. *See id.* at 21–22, 114 S.Ct. 367. The conduct need not be psychologically injurious, however, "[s]o long as the environment would reasonably be perceived, and is perceived, as hostile or abusive." *Id.* at 22, 114 S.Ct. 367 (citing *Meritor*, 477 U.S. at 67, 106 S.Ct. 2399). Nonetheless, "simple teasing, off-hand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (internal quotations and citation omitted).

The Supreme Court further explains:

[W]hether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required.

*Harris*, 510 U.S. at 23, 114 S.Ct. 367.

Scott has presented evidence that she subjectively found Brown's conduct to be abusive. She testifies that it upset her, caused her to cry on more than one occasion, and affected her relationships within her family. In addition, the court finds sufficient evidence to establish an objectively abusive environment. There was a high frequency of Brown's conduct. There were times that he physically blocked Scott's way. A jury could also find that the frequency and severity of Brown's conduct unreasonably interfered with Scott's work performance. Ameritex's contention that Scott never sought the services of a psychiatrist, although relevant, is not determinative of the issue. Consequently, taking the facts in the light most favorable to Scott, there is a genuine issue of material fact for trial as to whether Scott was subjected to a hostile work environment.

### b. Second Inquiry—Vicarious Liability

■ Scott has survived the threshold question of liability by presenting evidence of a hostile working environment in violation of Title VII. The second question of the court's inquiry is whether Ameritex may be held vicariously liable for the alleged violation. The standard for imputing liability to the employer depends upon whether there has been a tangible employment action. If there has been, then the employer is strictly liable for the action: "[W]hen a supervisor's sexual harassment of an employee culminates in a 'tangible employment action,' such as discharge, demotion, or undesirable reassignment, the employer is liable for the harassment, regardless of whether the employer knew or should have known of the harassment and regardless of whether the employer took remedial steps to end the harassment after learning of it." *Reinhold v. Commonwealth of Va.*, 151 F.3d 172, 174–75 (4th Cir.1998).

However,

where the employee does not suffer a tangible employment action, but rather suffers an actionable hostile environment based on sex, the employer is still vicariously liable for the hostile environment created by its supervisor, *unless* the employer can prove by a preponderance of the evidence: (1) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and (2) that the employee "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer to avoid harm."

*Id.* at 175 (quoting *Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257), Thus, Ameritex is vicariously liable for the existence of a hostile working environment created by Brown, but it may avoid liability if it can make the two required showings of the affirmative defense set forth in *Faragher* and *Ellerth* ("*Ellerth* defense").[2]

 There are genuine issues of material fact with respect to both prongs of the defense. An employer may satisfy the first prong with proof that it promulgated an anti-harassment policy with a complaint procedure, but such a policy is not necessarily required as a matter of law. *See Ellerth,* 524 U.S. at 765, 118 S.Ct. 2257. An employer cannot satisfy the reasonableness inquiries of the first and second prongs, however, if it entirely fails to disseminate the policy or if the policy does not include a mechanism allowing an employee to bypass the harassing supervisor when lodging a complaint. *See Faragher,* 524 U.S. at 808, 118 S.Ct. 2275.

Ameritex offers evidence that it had a policy in effect and that Scott was aware of the policy. Accordingly, Ameritex argues that it took reasonable preventive measures and that Scott unreasonably failed to avail herself of them. Scott, on the other hand, offers evidence that there was no policy in effect and that, even if there was a policy, she had no knowledge of it. Furthermore, Scott offers evidence that the policy to which Ameritex points was a policy implemented by Scott's preceding employer (that sold the plant to Ameritex) and that the policy either was not in effect or was not communicated to Scott. The court concludes that Scott presents genuine issues of material fact for trial as to whether a policy existed, whether a policy (if one existed) was communicated to Scott, and whether Scott unreasonably failed to take advantage of any policy that was communicated to her. Accordingly, the court cannot grant Ameritex summary judgment based upon the two-prong affirmative defense.

### 2. Constructive Discharge

Scott's second theory supporting her claim of sex discrimination in violation of Title VII is that she was constructively discharged. Section 2000e–2(a)(1) prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). The Supreme Court defines a tangible employment action is one causing "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth,* 524 U.S. at 761, 118 S.Ct. 2257. Such actions affect the "compensation, terms, conditions, or privileges of employment," and hence violate section 2000e–2(a)(1). *See id.*

Although Ameritex did not expressly discharge Scott, Scott claims that she was constructively discharged because she was forced to resign by virtue of the hostile working environment. Thus, Scott argues that a "tangible employment action" was taken against her. If successful, this theo-

---

2. The affirmative defense for hostile working environment claims was set forth in both *Ellerth* and *Faragher* on the same day. Because courts tend to refer to the defense as "the *Ellerth* defense," the court will do so as well.

ry would bar the *Ellerth* defense and result in the automatic imputation of liability to Ameritex.

 "Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." *Munday v. Waste Management of N. Am., Inc.*, 126 F.3d 239, 244 (4th Cir.1997) (internal quotations omitted). Constructive discharge contains two elements: intolerability and deliberateness. Intolerability "is assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign." *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir.1985). Deliberateness requires proof that " 'the actions complained of were intended by the employer as an effort to force the employee to quit.' " *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1354 (4th Cir.1995) (quoting *Paroline v. Unisys Corp.*, 879 F.2d 100, 114 (4th Cir.1989) (Wilkinson, J., dissenting)). It is sufficient, however, to prove this intent by demonstrating that "resignation was the reasonable foreseeable consequence of the employer's conduct." *Id.* at 1356 (internal quotations omitted).

The court holds that a constructive discharge does not rise to the level of a tangible employment action in violation of 42 U.S.C. § 2000e–2(a)(1). Alternatively, the court holds that Scott was not constructively discharged because she did not seek redress from Ameritex prior to resigning. The court will examine these two rationales in turn.

### a. Constructive Discharge Not a Tangible Employment Action

 First, constructive discharge is not a "tangible employment action," as

that term is used in *Ellerth* and *Faragher*, because it is not an action made with the authority or approval of the employer. *See Caridad v. Metro–North Commuter R.R.*, 191 F.3d 283, 294 (2d Cir.1999); *accord Powell v. Morris*, 37 F.Supp.2d 1011, 1019 (S.D.Ohio 1999). *But see Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 149 n. 5 (3d Cir.1999) (recognizing constructive discharge as a tangible employment action barring *Ellerth* defense); *Galloway v. Matagorda County*, 35 F.Supp.2d 952, 957 (S.D.Tx.1999) ("Constructive discharge qualifies as a tangible or adverse employment action.").[3] In *Ellerth* and *Faragher*, the Supreme Court held that an employer is strictly liability for tangible employment actions by its supervisors upon the theory that "a tangible employment action taken by the supervisor becomes for Title VII purposes the act of the employer." *Ellerth*, 524 U.S. at 762, 118 S.Ct. 2257. The Court founded this conclusion upon basic agency principles. As further explained by the Court:

> Tangible employment actions are the means by which the supervisor brings the official power of the enterprise to bear on subordinates. A tangible employment decision requires an official act of the enterprise, a company act. The decision in most cases is documented in official company records, and may be subject to review by higher level supervisors. The supervisor must obtain the imprimatur of the enterprise and use its internal processes.

*Id.* In essence, the Court applied agency principles and determined that they always render a principle liable for "tangible employment actions" of its agent. *See id.*

---

**3.** The Fourth Circuit has held that a "[c]obstructive discharge may be an *adverse employment action* in violation of § 2000e–3(a) 'when the record discloses that it was in retaliation for the employee's exercise of rights protected by the Act.' " *Munday*, 126 F.3d at 243 (emphasis added). The Fourth Circuit has *not* held, however, that a constructive discharge may form the basis of a *tangible*

*employment action* in violation of section 2000e–2(a)(1), which is the issue in the instant case. In light of the recent Supreme Court decisions of *Faragher* and *Ellerth*, the court concludes that the principles for establishing a tangible employment action under section 2000e–2(a)(1) are necessarily different than the principles for establishing an adverse employment action under section 2000e–3(a).

The court recognizes today, however—as did the Second Circuit in *Caridad*—that there is no official corporate action as described by the *Ellerth* Court when there is a constructive discharge. *See Caridad,* 191 F.3d at 294–95. There is no official act, no documentation, no review, and no use of internal procedures. Instead, constructive discharge involves unofficial acts by a supervisor that lead an *employee* to make a decision to resign in order to avoid intolerable conditions. Such unofficial acts certainly do not carry the "imprimatur" (i.e. the approval) of the corporation. Therefore, even if Scott was constructively discharged, there would be no tangible employment action such that Ameritex would be strictly liable for Brown's conduct.

**b. Scott Not Constructively Discharged**

Alternatively—even if a constructive discharge could be a tangible employment action under the principles of *Ellerth* and *Faragher*—the court holds that there was no constructive discharge in the instant case. The first element of a constructive discharge is intolerability. As stated above, "[i]ntolerability of working conditions ... is assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign." *Bristow,* 770 F.2d at 1255. Other jurisdictions have held, however, that this reasonableness inquiry is not met when the employee does not first give the employer an opportunity to remedy the situation. *See, e.g., Knowles v. Citicorp Mortgage, Inc.,* 142 F.3d 1082, 1086 (8th Cir.1998) (affirming summary judgment for employer on constructive discharge claim because employee did not pursue internal grievance procedure).

Although the Fourth Circuit has not required the employee to seek redress from the employer before there can be a constructive discharge, such a requirement is in keeping with the *Ellerth* defense. In fact, if an employee could convert a hostile working environment claim into a constructive discharge claim simply by resigning without first seeking redress from the employer, then the *Ellerth* defense would ring hollow. *Cf. EEOC v. Barton Protective Servs., Inc.,* 47 F.Supp.2d 57, 59 (D.D.C.1999) ("Assigning the labels of 'constructive discharge' and 'tangible employment action' ... would make nonsense of the [*Ellerth* ] affirmative defense."). As another district court stated:

> Given the pivotal importance notice plays in supervisor sexual harassment cases [as demonstrated by the *Ellerth* defense], this Court concludes that the instant plaintiffs neutralized their constructive discharge claims by not notifying their employer of their problems with Brown. To hold otherwise would allow a constructive-discharge claiming employee to procedurally bypass her employer's grievance procedure and deprive it of the *Ellerth /Faragher* affirmative defense. That would simply moot the employer's preventive and corrective efforts, and gut *Ellerth /Faragher's* goal of encouraging sensible grievance procedures.

*Jones v. USA Petroleum Corp.,* 20 F.Supp.2d 1379, 1384 (S.D.Ga.1998).

The court concludes that, even if a constructive discharge may rise to the level of a tangible employment action, Scott's failure to seek redress from Ameritex prior to her resignation bars her claim for constructive discharge. If Scott's failure was reasonable due to Ameritex not having an effective complaint procedure in place, then Scott may seek‐redress under her hostile environment claim.[4]

---

4. It is arguable that in the post-*Ellerth /Faragher* era of Title VII litigation, constructive discharge claims always are more appropriately analyzed as hostile environment claims, regardless of whether the employee first sought redress from the employer. Other-wise, a potential plaintiff could conceivably convert any hostile working environment claim into a tangible employment action claim simply by resigning. Such a result clearly is not contemplated by the *Ellerth* and *Faragher* decisions. Indeed, such a result

### c. Conclusion

In sum, the court holds that a constructive discharge is not a tangible employment action in violation of 42 U.S.C. § 2000e–2(a)(1). Alternatively, even if it could be considered a tangible employment action, there can be no constructive discharge when the employee fails to first seek redress from the employer. Accordingly, Scott's claim is more appropriately analyzed as a hostile environment claim. The court therefore grants Ameritex's motion for summary judgment with respect to Scott's constructive discharge claim but denies Ameritex's motion with respect to Scott's hostile environment claim.

### B. Ameritex's Objection— Punitive Damages

Finally, Ameritex objects to the magistrate judge's failure to address Ameritex's motion for summary judgment on the issue of punitive damages. The court reviews this issue *de novo*. For the reasons stated below, the court agrees with Ameritex that it cannot be held liable for punitive damages.

### 1. Evidence of Malice or Reckless Indifference

 Punitive awards are authorized "in only a subset of cases involving intentional discrimination." *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 119 S.Ct. 2118, 2124, 144 L.Ed.2d 494 (1999). More specifically, Ameritex can be held liable for punitive damages only if it acted "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). This standard requires something more than the showing required to establish a right to compensatory damages. *See Kolstad*, 527 U.S. at ——, 119 S.Ct. at 2124. The Supreme Court, however, recently rejected the conclusion that an additional showing of "egregious conduct" is re-

quired. Rather, the Court stated that "[t]he terms 'malice' and 'reckless' ultimately focus on the actor's *state of mind*." *Kolstad*, 527 U.S. at ——, 119 S.Ct. at 2124 (emphasis added). Furthermore, this state of mind requirement "pertain[s] to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Id.* Although not required, "egregious or outrageous acts may serve as evidence supporting an inference of the requisite 'evil motive.'" *Id.* at 2126.

 It is not necessary to show actual malice. It is sufficient for Scott to present evidence of a reckless indifference to her rights under Title VII. Reckless indifference exists if there is "a 'subjective consciousness' of a risk of injury or illegality and a 'criminal indifference to civil obligations.'" *Id.* at 2125 (quoting *Smith v. Wade*, 461 U.S. 30, 37 n. 6, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983)). Thus, "an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages." *Id.* The Supreme Court has shed light on the types of situations in which there may be intentional discrimination, but in which the requisite malice or reckless indifference may not be present:

> There will be circumstances where intentional discrimination does not give rise to punitive damages liability under this standard. In some instances, the employer may simply be unaware of the relevant federal prohibition. There will be cases, moreover, in which the employer discriminates with the distinct belief that its discrimination is lawful. The underlying theory of discrimination may be novel or otherwise poorly recognized, or an employer may reasonably believe that its discrimination satisfies a bona

would strip the Supreme Court's distinction between hostile environment claims and tangible employment action claims of all meaning. The court need not decide this issue today, however, as it is sufficient to hold

that an employee cannot demonstrate the reasonableness element of a constructive discharge when the employee wholly fails to seek redress from the employer prior to resigning.

fide occupational qualification defense or other statutory exception to liability. *Id.* at 2125.

Under this framework, there is evidence that Brown intentionally harassed Scott with malice or in reckless disregard of her rights under Title VII. For example, Scott presents evidence of the egregiousness of Scott's conduct, and this evidence may permissibly be considered by a jury to support a finding of malice or recklessness. In addition, none of the above-described exceptions are applicable. Ameritex cannot claim that it was unaware of the prohibition against a hostile working environment on the basis of sex or that it believed sexual harassment to be lawful. Nor can Ameritex claim that a hostile working environment is a novel or poorly recognized claim. In addition, the alleged discrimination cannot be said to satisfy a bona fide occupational qualification or other statutory exception to liability. Accordingly, the initial inquiry for a punitive damages award is met.

### 2. Imputing Liability to Ameritex

In addition to the existence of malice or reckless indifference, there must be a basis for imputing liability to the employer before there can be an award of punitive damages. *See id.* at 2127. The *Kolstad* Court stated that agency principles are relevant to this inquiry, and the court cited to the Restatement (Second) of Agency:

Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if:

(a) the principal authorized the doing and the manner of the act, or

(b) the agent was unfit and the principal was reckless in employing him, or

(c) the agent was employed in a managerial capacity and was acting in the scope of employment, or

(d) the principal or a managerial agent of the principal ratified or approved the act.

Restatement (Second) of Agency § 217C (1957) (*quoted in Kolstad,* 527 U.S. at ——, 119 S.Ct. at 2128). The Supreme Court, however, stated that it is necessary to modify these standards so as to preclude liability "[w]here an employer has undertaken ... good faith efforts at Title VII compliance." *Id.* at 2129. Otherwise, "even an employer who makes every effort to comply with Title VII would be held liable for the discriminatory acts of agents acting in a 'managerial capacity.' " *Id.* Such liability is contrary to the prophylactic purposes of Title VII. *See id.* It also is contrary to "the very principles underlying common law limitations on vicarious liability for punitive damages—that it is 'improper ordinarily to award punitive damages against one who himself is personally innocent and therefore liable only vicariously.' " *Id.* (quoting Restatement (Second) of Torts § 909 cmt. b, at 468 (1979)).

Applying these standards, there is no basis to impute liability to Ameritex for punitive damages. There is no showing that Ameritex "authorized the doing and the manner of the act"; that Brown "was unfit and the principal was reckless in employing him"; that Brown "was employed in a managerial capacity and was acting in the scope of employment";[5] or that Ameritex "ratified or approved the act." Restatement (Second) of Agency § 217C. Consequently, agency principles endorsed by the Supreme Court do not

---

5. Although Brown apparently acted in a managerial capacity, he did not act "in the scope of employment." As the *Kolstad* Court said: "The Restatement of Agency provides that even intentional torts are within the scope of an agent's employment if the conduct is 'the kind [the employee] is employed to perform,' 'occurs substantially within the authorized time and space limits,' and 'is actuated, at least in part, by a purpose to serve the' employer." *Kolstad,* 527 U.S. at ——, 119 S.Ct. at 2128 (quoting Restatement (Second) of Agency § 228(1), at 504). Ameritex did not employ Brown to perform sexual harassment. Nor could Brown's conduct be considered as actuated, even in part, by a purpose to serve Ameritex. Thus, Brown's conduct was outside the scope of his employment.

support imputing punitive liability to Ameritex. Furthermore, this court's decision is supported by the general principle "that it is 'improper ordinarily to award punitive damages against one who himself is personally innocent and therefore liable only vicariously.'" *Kolstad,* —— U.S. at ——, 119 S.Ct. at 2129 (quoting Restatement (Second) of Torts § 909, at 468 cmt. b).

■ Finally, the Supreme Court's modification of the agency standards forth in the Restatement is of no avail to Scott. The Supreme Court stated that the Restatement's principles should not apply to render an employer liable when that employer has taken good-faith efforts to comply with Title VII. This modification allows an employer making good-faith efforts to avoid punitive liability when agency principles would otherwise direct a finding of liability. Because agency principles do not direct a finding of liability, it is irrelevant whether Ameritex took good faith efforts to comply with Title VII. Although Scott interprets *Kolstad* to say that punitive liability should be imposed when there are no good faith efforts, (Pl.'s Opp'n Def.'s Mot. Summ.J. at 29–30), this negative inference will not be adopted for two reasons.

First, this statement was not the holding of *Kolstad.* Rather, it is an inference from the *Kolstad* holding that is not dictated by logic. For example, assume that the following statement is true: "If it is raining, then the streets are wet." It could be implied that "if it is not raining, then the streets are not wet." Although such an implication may be true, it also may be false. For example, the streets might be wet for a reason other than rain, such as a sprinkler in a nearby yard.

The rule of law at issue today is that "if an employer *takes* good-faith efforts to comply with Title VII, then it is *not liable* for punitive damages regardless of the application of agency principles." It could be implied that "if an employer *fails* to take good-faith efforts to comply with Title VII, then it *is liable* for punitive damages regardless of the application of agency prin-

ciples." Such a negative inference is not dictated by logic, as demonstrated above. Because the court refuses to find that "the streets are wet," the court declines to adopt Scott's interpretation.

The second reason that the court declines to adopt Scott's interpretation is that the lack of good faith efforts to comply with Title VII does not demonstrate that Ameritex itself acted with malice or reckless disregard of Scott's rights:

> In evaluating the sufficiency of evidence on the malice or reckless indifference of employers, courts have focused on three types of evidence: (1) evidence of the employer's attitude towards sexual harassment; (2) direct statements by the employer about plaintiffs' rights or complaints; and (3) the egregiousness of the conduct at issue.

*Harris v. L & L Wings, Inc.,* 132 F.3d 978, 983 (4th Cir.1997). Under the first type of evidence, "the absence of a written sexual harassment policy ... is in no way dispositive of a claim for punitive damages." *Id.* Scott presents no other evidence of Ameritex's "attitude." Under the second type of evidence, Ameritex does not present to the court direct statements by Ameritex about Scott's rights or complaints. Under the third type of evidence, Scott presents evidence of the egregiousness of the conduct at issue. Under *Kolstad,* which has been decided since *Harris,* the egregiousness inquiry is relevant to step one of the punitive damages inquiry (i.e., establishing malice or reckless indifference on the part of the supervisor), but it is not relevant to step two of the inquiry (i.e., whether the malice or reckless indifference may be imputed to the employer). In sum, the court refuses to adopt Scott's contention that an absence of good-faith efforts to comply with Title VII automatically dictates that punitive liability is imputable to Ameritex.

### 3. Conclusion

In conclusion, the court finds that there is evidence that Brown acted with malice

or reckless disregard of Scott's rights, but there is insufficient evidence that this malice or recklessness should be imputed to Ameritex. Accordingly, liability for punitive damages cannot be imputed to Ameritex.

Therefore, it is

**ORDERED** that Ameritex's motion for summary judgment is denied with respect to Scott's hostile working environment claim. It is further

**ORDERED** that Ameritex's motion for summary judgment is granted with respect to Scott's constructive discharge claim. It is further

**ORDERED** that Ameritex's motion for summary judgment is granted on the issue of punitive damages.

**IT IS SO ORDERED.**