Barbara ASHTON, on Behalf of
her minor daughter Sheena
ASHTON, Plaintiff,

v.

Iselbhor OKOSUN, et al., Defendants.

No. CIV.A. AW–02–2215.

United States District Court,
D. Maryland,
Southern Division.

May 28, 2003.

Isaac N. Ndoga, Hyattsville, MD, for Plaintiff.

Bruce S. Harrison, Shawn and Rosenthal, LLP, Baltimore, MD, for Defendants.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

Barbara Ashton ("Plaintiff"), on behalf of her minor daughter Sheena Ashton

("Ashton"), brought suit against Iselbhor Okosun ("Okosun") and Republic Foods, Inc. ("RFI")(collectively, "Defendants") alleging sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.,* as well as various state common law claims. Currently pending before the Court is the motion for summary judgment filed by Defendants [Paper No. 14] in which Defendants move the Court to enter judgment as a matter of law in their favor on all counts in the Complaint. The motion has been fully briefed by both parties. No hearing is deemed necessary. *See* D. Md. R. 105.6. Upon consideration of the arguments made in support of, and opposition to, the motion, the Court makes the following determinations.

## I. FACTUAL BACKGROUND

The following facts are not in dispute. RFI is a Burger King franchisee that owns a Burger King restaurant in Lanham, Maryland. Okosun was and is the Assistant Manager at that restaurant. RFI maintains a policy forbidding sexual harassment in the workplace. Each new employee at its restaurant receives an employee guide which lays out the company's sexual harassment policy. The policies are also posted on a board in the restaurant's kitchen.

Before beginning her employment at the Burger King restaurant, Ashton, who was a minor at the time of the incidents in the Complaint, worked as a food runner at a nearby Red Lobster. She knew Okosun from when she would go into Burger King on breaks from that job. During one of these meetings, Okosun asked Ashton if she had any interest in working at Burger King. Two weeks later, Ashton came in to apply for a job. After filling out an application and after having an interview, RFI hired her. Her first day of work was November 10, 2000. On that day, she received Burger King's employee guide. That guide included the sexual harassment policies of the company. She read the guide and signed an acknowledgment form stating that she had read and understood the guide.

On November 11, 2000, Plaintiff alleges that, during the course of work, Okosun asked Ashton to come to the back of the restaurant. Ashton and Okosun had a conversation. At the end of the conversation, Okosun touched Ashton on her buttocks. On the third day of her employment, Okosun "attempted" to hug Ashton out by the dumpster of the restaurant. Ashton did not report this behavior to anyone. On November 19, Ashton's final day working at the restaurant, Okosun again touched Ashton on her buttocks.[1] At no point while working at the restaurant did Ashton bring this behavior to the attention of anyone at RFI nor did she tell anyone about the incidents. Okosun never made any sexual remarks to her, nor did he ever talk about sex in front of her.

The following day, Ashton informed her mother, the Plaintiff in this suit, about the touchings. Plaintiff contacted an RFI manager who said that he would investigate the matter. He concluded at the end of his investigation that Ashton's allegations were unfounded. He did, however, offer to change Ashton to a different shift where she would not have to work with Okosun. She did not accept that offer, nor did she ever return to work.

In March 2001, Plaintiff filed a complaint with the police. Charges were

---

1. Defendants argue strenuously that it was only a "touch" or a "pat" and that Okosun did not fondle Ashton. Plaintiff appears to partly concede this, calling the physical contact a "smack" or a "pat."

brought against Okosun for assault and for a sexual offense. The charges were put on the inactive docket in October 2001. Plaintiff filed an EEO complaint on November 29, 2001. She received a right to sue letter on January 10, 2002. She thereafter filed an action in state court. That action was removed to this court based upon federal question jurisdiction.

## II. SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Haavistola v. Community Fire Co. of Rising Sun, Inc.,* 6 F.3d 211, 214 (4th Cir.1993); *Etefia v. East Baltimore Comm. Corp.,* 2 F.Supp.2d 751, 756 (D.Md.1998). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1). The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine,* 501 U.S. 496, 520, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) (citations omitted). While the evidence of the non-movant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transportation, Inc.,* 152 F.3d 326, 330–31 (4th Cir. 1998); *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985).

In responding to a proper motion for summary judgment, the party opposing summary judgment must present evidence of specific facts from which the finder of fact could reasonably find for him or her. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); 10A Charles Alan Wright et al., Federal Practice and Procedure § 2729.1 (3d.1998). The non-movant must show that she has access to admissible evidence for presentation at trial. *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548. In the absence of contradictory evidence showing a genuine dispute as to a material fact, the moving party is entitled to judgment as a matter of law. *See id.* at 317, 106 S.Ct. 2548 (1986). For the purposes of summary judgment, a genuine dispute exists if a reasonable jury could return a verdict for the non-moving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505 (1986). While the non-moving party must do more than merely raise some doubt as to the existence of a fact, the moving party ultimately bears the burden of demonstrating the absence of all genuine issues of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. FAILURE TO EXHAUST/STATUTE OF LIMITATIONS

Before reaching the merits of the claims brought by Plaintiff, the Court must determine whether the complaint should be dismissed for Plaintiff's failure to exhaust her administrative remedies. Defendants argue that because Plaintiff failed to file an administrative charge with the EEOC within the required 300–day period, her claims are time-barred and must be dismissed. Plaintiff does not dispute that the claims are time-barred but argues that her claims should survive based on a theory of equitable tolling.

██ In the State of Maryland, a Title VII plaintiff must file an administrative charge with the EEOC within 300 days of the alleged unlawful employment practice. *See* 42 U.S.C. § 2000e–5(e)(1); *EEOC v. R & R Ventures,* 244 F.3d 334, 338 (4th Cir.2001); *Tinsley v. First Union Nat'l Bank,* 155 F.3d 435, 439 (4th Cir.1998). Plaintiff argues, without citation to any legal authority, that the statute of limitations should be tolled because of Ashton's status as a minor at the time of the incidents.[2] While the Court has not come across a case that is directly on point, both precedent from the Court of Appeals for the Fourth Circuit and authority in other jurisdictions establish that without a specific statutory provision exempting minors from the statute of limitations, the Court has no authority to toll the statute based on a party's infancy. In an analogous case brought under the Emergency Family and Medical Leave Act, the Fourth Circuit stated in denying a minor's request to toll the statute of limitations:

> Exceptions to the running of the statute of limitations period because of the would-be plaintiff's disability, though common, are nonetheless exceptions. The blackletter rule, recognized by the Supreme Court since at least 1883, is that a statute of limitations runs against all persons, even those under a disability, unless the statute expressly provides

otherwise. This rule is regularly applied to federal statutes that contain a limitations period but no exception for disability.

*Vogel v. Linde,* 23 F.3d 78, 80 (4th Cir.1994)(internal citations omitted).[3] This rule-that only the legislature can exempt a certain class of people from the effects of the statute of limitations-finds broad-based approval in both federal and state cases. *See Brewer v. Miami County Hospital,* 862 F.Supp. 305, 308 (D.Kan.1994)("A statute of limitations runs against minors in the absence of an express statutory provision tolling the limitations period."); *MacBride v. Gulbro,* 247 Md. 727, 730–31, 234 A.2d 586 (1967); *Barbour v. Williams,* 196 Miss. 409, 416, 17 So.2d 604 (1944)("Minority does not per se bestow immunity. There must be a legislative saving in their favor."). One federal district court has applied this rule by declining to toll the statute of limitations for a minor suing under Title VII, *Shakhnovskiy v. Courtesy Lumber & Supply Co.,* 1995 WL 437512, at *2 (N.D.Ill.1995), while another has applied it in a Fair Housing Act case. *Sherwood v. Finch,* 2000 WL 1862562, at *8 (D.Or.2000).

██ In this case, Plaintiff has pointed to no provision in Title VII exempting minors from the responsibility that they have to file timely administrative charges. In es-

---

**2.** The Title VII filing requirements act like a statute of limitations, not a jurisdictional bar to suit, and are therefore subject to "equitable modification" such as equitable tolling or estoppel. *Price v. Litton Business Systems, Inc.,* 694 F.2d 963, 966 n. 2 (4th Cir.1982)(citing *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)).

**3.** The *Vogel* Court cited the Supreme Court case *Vance v. Vance,* 108 U.S. 514, 521, 2 S.Ct. 854, 27 L.Ed. 808 (1883) for an expression of the rule:

> The exceptions from the operation of statutes of limitations, usually accorded to in-

fants and married women, do not rest upon any general doctrine of the law that they cannot be subjected to their action, but in every instance upon express language in those statutes giving them time after majority, or after cessation of coverture, to assert their rights.

*Vogel,* 23 F.3d at 80; *see also Morgan v. City of Des Moines,* 60 F. 208, 210 (8th Cir. 1894)("But, however this may be, the argument against the justice and wisdom of the statute which contains no savings clause in favor of infants must be addressed to the legislature, and not to the courts.").

sence, Plaintiff asks the Court to carve an exception to the blackletter rule and exempt a category of people not exempted by statute. The Court will not, however, create a new category of exempted persons without any statutory mandate. Since the statute of limitations was not tolled during Plaintiff's minority, her Title VII claims must be dismissed for failure to file an administrative charge within the 300–day period.

■ Again relying on unstated legal authority, Plaintiff also claims that the statute should be tolled because RFI failed to give "adequate notice" to Plaintiff of the statutory requirements. Plaintiff appears to be making a "failure to post" argument, whereby the statute of limitations is tolled by a defendant's failure to post notices required by statute and/or regulation. First, the Court is unclear whether a "failure to post" argument-presuming the truth of the allegation that Defendant failed to post the EEOC notices-is accepted as the law in this Circuit as authority from other cases indicates that to toll the statute a plaintiff must show deliberate misconduct on the part of defendant in concealing the cause of action from the plaintiff. *See Price,* 694 F.2d at 965. In fact, one Fourth Circuit case (vacated and remanded by the Supreme Court on evidentiary grounds) cited with approval to a Fifth Circuit case that rejected a "failure to post" argument because no allegations were made regarding any misconduct by the defendant. *See Polsby v. Chase,* 970 F.2d 1360, 1363 (4th Cir.1992), *vacated sub nom. by,* 507 U.S. 1048, 113 S.Ct. 1940, 123 L.Ed.2d 646 (1993). In any event, one

district court in this Circuit, relying on *Vance v. Whirlpool Corp.,* 716 F.2d 1010 (4th Cir.1983)(tolling the statute of limitations based on employer's failure to post notice under the ADEA), tolled the statute of limitations, basing its decision *in part·* on defendant's failure to post EEOC notices. *See Llewellyn v. Celanese Corp.,* 693 F.Supp. 369, 379 (W.D.N.C.1988)("This court holds that defendants' failure to post statutorily-required notice *and* plaintiff's mentally disabled condition justify tolling the statute of limitations . . . .")(emphasis in original).

Plaintiff relies exclusively on *Llewellyn,* but the ruling of that case is of limited applicability to the facts in this case because there the court found that plaintiff's mental disability made it impossible for her to file a timely administrative charge. In fact, a reading of the opinion indicates that plaintiff's mental disability may have played a larger proportionate role in the Court's conclusion than the employer's failure to post notices. Regardless, Plaintiff's argument still fails because she has made absolutely no showing that Defendant failed to post the required notices. To save her claim, Plaintiff relies solely upon the allegation made in her opposition papers that RFI didn't provide adequate notice of statutory requirements. The evidentiary record, however, is devoid of any showing that RFI actually failed to post the required notice.[4] The Court will not toll the statute of limitations based upon a legal theory of questionable validity and a factual allegation comprised of only conjecture.[5]

4. Plaintiff cites to the depositions of Okosun and Ashton for support of her allegation that RFI failed to post notices. Plaintiff did not, however, cite the pages of the deposition transcripts that allegedly support such a claim. That assertion, therefore, lacks any weight.

5. Furthermore, "equitable tolling", as its name suggests, is meant to be reserved for deserving cases. "The circumstances under which equitable tolling has been permitted are therefore quite narrow." *Chao v. VDOT,* 291 F.3d 276, 283 (4th Cir.2002). The Court has been presented with no equitable justifi-

In sum, all Title VII claims against Defendants must be dismissed because Plaintiff did not file a timely administrative charge with the EEOC. The statute of limitations would lack meaning if plaintiffs could whimsically argue for tolling based upon novel legal theories or based upon factual speculation. As no grounds exist for tolling the statute of limitations, the claims must be dismissed.

## IV. SEXUAL HARASSMENT/RETALI-ATION UNDER TITLE VII

Even if Plaintiff's claims were somehow saved from the statute of limitations, on the merits it is clear that Defendants are entitled to judgment as a matter of law on all of the Title VII claims. First, Defendant is entitled to judgment as a matter of law on any claims of constructive discharge. Second, Plaintiff cannot show a prima facie case of hostile work environment sexual harassment and, even if she could, she has not demonstrated why RFI would not benefit from any relevant affirmative defense. Third, Plaintiff cannot support a claim for retaliation.

### A) Constructive Discharge

■ Because a determination on Plaintiff's claim of constructive discharge informs the Court's analysis on the claims of hostile work environment and retaliation, the Court will first resolve the issue of constructive discharge. Upon review of the record before it, and reading all inferences in favor of the non-moving party, the Court concludes that no reasonable jury could conclude that Ashton was constructively discharged. "Constructive discharge occurs when an employer deliberately makes the employee's working conditions intolerable and thereby forces him to quit his job." *Munday v. Waste Mgt. Of N. Am., Inc.,* 126 F.3d 239, 244 (4th Cir.1997) (citations omitted). To establish a claim of constructive discharge, a plaintiff must establish two elements: intolerability and deliberateness. *See Scott v. Yarn,* 72 F.Supp.2d 587, 594 (D.S.C.1999). "Intolerability 'is assessed by the objective standard of whether a reasonable person in the employee's position would have felt compelled to resign.'" *Id.* (quoting *Bristow v. Daily Press, Inc.,* 770 F.2d 1251, 1255 (4th Cir. 1985)). "Deliberateness exists only if the actions complained of were intended by the employer as an effort to force plaintiff to quit." *Taylor v. Virginia Union Univ.,* 193 F.3d 219, 237 (4th Cir.1999)(en banc), *cert. denied,* 528 U.S. 1189, 120 S.Ct. 1243, 146 L.Ed.2d 101 (2000).

■ Plaintiff's claim of constructive discharge, even when reading all inferences in her favor, finds no support in the record. First, the record is devoid of any actions taken by RFI which show a deliberateness on its part to make Plaintiff resign. In fact, RFI did not know of any allegations of sexual harassment until after Plaintiff had worked her last day at the restaurant. Any claim of deliberateness is also contradicted by the undisputed fact that RFI attempted to persuade Ashton to return and attempted to ameliorate any harassing behavior by changing Ashton's shift. Plaintiff can refer the Court to no part of the record in support of a finding that RFI took deliberate actions to make Plaintiff resign, nor can such a claim be inferred from the record. As one court has stated:

cation upon which to grant a tolling of the statute of limitations, nor has Plaintiff explained why she was unable to file a timely charge. In fact, as her complaint to the police suggests, she appears to have been more than capable of investigating and pursuing legal remedies on behalf of her daughter.

Plaintiff then voluntarily terminated her employment without giving Defendant a reasonable opportunity to address any further concerns. Plaintiff also never informed anyone in management that she felt as though she was under any discriminatorily motivated duress by her employer. Therefore, even viewing the facts in a light most favorable to Plaintiff, Plaintiff has failed to demonstrate deliberateness.

*Laprise v. Arrow Int'l, Inc.,* 178 F.Supp.2d 597, 608 (M.D.N.C.2001). Similarly in this case, Plaintiff left her employment, informed her employer of the alleged harassment which had taken place during her first and only week of employment, and then failed to return to allow for any corrective measures to be taken. These facts are not in dispute and warrant a ruling for Defendant as a matter of law.

### B) *Hostile Work Environment*

In addition to arguing that Plaintiff's Title VII claims are time-barred, Defendants move for summary judgment on the hostile work environment claim, arguing that Plaintiff has failed to establish her prima facie case. RFI further argues that it has established an affirmative defense to any charge of workplace sexual harassment. The Court concludes that no basis exists to impute liability to RFI and that RFI has established the affirmative defense to the hostile work environment claim.

■■■ "To prevail on a Title VII hostile work environment claim, [plaintiff] must establish four elements: (1) unwelcome conduct, (2) based on [plaintiff's] gender, (3) sufficiently pervasive or severe to alter the conditions of employment and to create a hostile work environment, and (4) some basis for imputing liability to [defendant]." *Matvia v. Bald Head Island Mgt., Inc.,* 259 F.3d 261, 266 (4th Cir. 2001). After the Supreme Court established an affirmative defense to a claim of hostile workplace environment in *Faragher v. City of Boca Raton,* 524 U.S. 775, 807–08, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) and in *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 764–65, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), courts have read the establishment of the affirmative defense to mean that no basis exists for imputing liability to the employer. *See, e.g., Thomas v. BET Soundstage Restaurant,* 104 F.Supp.2d 558, 563 (D.Md.2000). The affirmative defense only applies in cases where no tangible employment action has been taken by the employer against the plaintiff. *See Matvia,* 259 F.3d at 266. When the employer has taken no tangible employment action, an employer can defend a charge of workplace sexual harassment by establishing: "(a) that the employer exercised reasonable care to prevent and promptly correct any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.* at 266–67.

■■ Without addressing the merits of Plaintiff's claim in terms of the first three elements of a prima facie case, the Court concludes that no basis exists to impute liability to RFI and that RFI has established the *Faragher/Ellerth* affirmative defense. The affirmative defense is available to RFI because it took no tangible employment action against Ashton.[6] As such, on

---

**6.** A district court in this Circuit has held that "constructive discharge" does not amount to a tangible employment action sufficient to prevent the employer from asserting the affir-mative defense in a hostile work environment case. *See Scott,* 72 F.Supp.2d at 594. That court noted that a constructive discharge did not involve action taken by the employer, but

the merits of the claim, summary judgment must be entered in RFI's favor. First, it is undisputed that RFI had a sexual harassment policy in effect at the time of the incidents in the Complaint. Evidence that the employer disseminated an effective anti-harassment policy provides "compelling proof of its efforts to prevent workplace harassment." *Lissau v. Southern Food Serv.*, 159 F.3d 177, 182 (4th Cir.1998). Furthermore, Plaintiff signed an acknowledgment form in which she acknowledged having read the employee guide that contained the company's policy. Plaintiff makes no arguments that persuade the Court that RFI had no policy in effect to correct and prevent any harassing behavior, nor does Plaintiff point to any part of the evidentiary record that would support an attack on RFI's anti-harassment policies.

■■■ As for the second prong, Plaintiff has failed to demonstrate that she took advantage of any of RFI's remedial measures. Before bringing any allegedly harassing behavior to RFI's attention, she left work without returning. She then informed RFI about the harassing behavior but never undertook to participate in any other of RFI's remedial procedures. In sum, it cannot be reasonably contested that RFI had a policy in place and that Ashton quit before undertaking the procedures that would have allowed RFI to correct any harassing behavior. Having established its affirmative defense, RFI is entitled to judgment as a matter of law.

### C) *Retaliation*

■■■ Defendant is also entitled to judgment as a matter of law on Plaintiff's claim of retaliation for protected activity.

To state a prima facie case of retaliation, the plaintiff must show that (1) she engaged in protected activity, (2) the employer took an adverse employment action against her, and (3) a casual connection existed between the connected activity and the adverse action. *See Munday*, 126 F.3d at 242. To prove the casual element, Plaintiff *must* establish that Defendant had knowledge of Plaintiff's EEO charge before committing the alleged act of retaliation. *See Dowe v. Total Action Against Poverty*, 145 F.3d 653, 657 (4th Cir.1998); *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir.1998)("Knowledge of a charge is essential to a retaliation claim.").

■■ The Court finds that Plaintiff's claim of retaliation must fail as a matter of law for two reasons. First, the Court has already held that no adverse employment action was taken against Ashton in that she was not constructively discharged (and she makes no assertion of any other adverse employment action). Second, even if she was constructively discharged, the EEO charge was filed more than a year after the alleged harassing behavior. It is beyond doubt that RFI had no knowledge of any EEO activity-(and, in fact, no such activity had yet taken place)-when it is alleged to have constructively discharged Ashton. No reasonable jury on the facts in evidence could conclude that RFI retaliated against Ashton for engaging in protected activity.

### V. CONCLUSION

All of Plaintiff's Title VII claims are time-barred by the applicable statute of limitations. Plaintiff has failed to persuade the Court that any cause exists to toll the statute of limitations. Therefore,

---

rather by the employee in resigning based upon allegedly intolerable conditions. *See id.* While the Court finds the *Scott* court's reasoning persuasive, it need not rely upon it be-

cause even if "constructive discharge" does qualify as a tangible employment action, the Court has already concluded that no "constructive discharge" occurred.

on those grounds alone, the Title VII claims must be dismissed. But even if the statute of limitations was somehow tolled, for the reasons herein stated, the Court finds that RFI is entitled to judgment as a matter of law on all federal claims.

Finding that no genuine issue of material fact exists and that Defendant is entitled to judgment as a matter of law on all federal claims, the Court grants summary judgment for the Defendant as to all claims brought under Title VII. As there is no diversity of citizenship in this case, jurisdiction for this Court to hear the state law claims is clearly based upon supplemental jurisdiction. *See* 28 U.S.C. 1367(c). Having fully resolved the federal claims, the Court declines to exercise supplemental jurisdiction over the state law claims.[7] *See* 28 U.S.C. 1367(c)(3); *Hinson v. Norwest Financial South Carolina, Inc.*, 239 F.3d 611, 617 (4th Cir.2001); *Evans*, 951 F.Supp. at 90; *Cf. Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 351, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). An Order consistent with this Opinion will follow.

### *ORDER*

For the reasons stated in the accompanying Memorandum Opinion dated May 28th 2003, IT IS this 28th day of May, 2003 by the United States District Court for the District of Maryland, hereby **ORDERED**:

1. That the Motion for Summary Judgment filed by Defendants [14] BE, and the same hereby IS, **GRANTED-in-part** as to all federal claims;

2. That the case BE, and the same hereby IS, **REMANDED** to the Circuit Court for Prince George's County;

3. That the Clerk of the Court **CLOSE** the case;

4. That the Clerk of the Court transmit copies of this Opinion and Order to all counsel of record.

---

7. The state-law claims now "predominate" in that they are all that is left between the parties. Furthermore, the Court finds that the interests of fairness and judicial economy are in no way compromised by a remand so that the state court can hear the remaining claims. Lastly, the fact that the case has only been before this Court for less than one year is a factor which weighs in favor of remanding the case.