**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | |
|---|---|
| NICOLE B., INDIVIDUALLY AND ON BEHALF OF N.B., | : No. 16 EAP 2019 |
| | : |
| | : Appeal from the Order of |
| Appellant | : Commonwealth Court dated |
| | : December 17, 2018 at 868 C.D. |
| | : 2018 affirming of the Judgment of |
| v. | : the Court of Common Pleas of |
| | : Philadelphia County, Civil Division, |
| | : entered on October 4, 2017 at 3745 |
| SCHOOL DISTRICT OF PHILADELPHIA, | : April Term 2014. |
| JASON JOHNSON AND JALA PEARSON, | : |
| | : ARGUED: March 10, 2020 |
| Appellees | : |

**OPINION**

**JUSTICE TODD**                                                  **DECIDED: September 16, 2020**

In this appeal by allowance, we consider whether principles of equitable tolling found in the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 962(e), or Pennsylvania's Minority Tolling Statute ("Minority Tolling Statute"), 42 Pa.C.S. § 5533(b)(1), apply to an otherwise untimely complaint filed by a minor's parent with the Pennsylvania Human Relations Commission ("Human Relations Commission"). For the reasons set forth below, we find that the PHRA's equitable tolling provision applies to a minor whose parent fails to satisfy the applicable statute of limitations for filing an administrative complaint prior to the minor reaching the age of majority. Thus, we reverse the order of the Commonwealth Court.

The facts underlying this appeal are not in dispute. On October 25, 2011, Appellant Nicole B.'s then-eight-year-old son N.B. was sexually assaulted by three of his male

fourth-grade classmates in a bathroom at his public elementary school in the City of Philadelphia. According to Appellant, N.B. had endured two months of pervasive physical and verbal harassment at school leading up to the sexual assault. The harassment included being called, *inter alia*, "faggot," "gay," and "homo" due to his not conforming to norms regarding masculinity, being punched and kicked, having his glasses broken, being urged to kill himself, and being bullied into unwanted sexual acts. During that time, both Appellant and N.B. reported the harassment to his teacher and to school administrators, to no avail. On November 5, 2011, Appellant withdrew N.B. from the elementary school after learning of the attack.[1]

Over two years later, on January 7, 2014, Appellant filed an administrative complaint with the Human Relations Commission against the Philadelphia School District ("District") in her individual capacity and on N.B.'s behalf, asserting claims of discrimination on the basis of gender and race under the PHRA. The Human Relations Commission rejected Appellant's complaint as untimely, because it was filed beyond the 180-day time limit. *See* 43 P.S. § 959(h) ("Any complaint filed pursuant to this section must be so filed within one hundred eighty days after the alleged act of discrimination. . . ."). Thereafter, Appellant filed a complaint against the District in the Philadelphia Court of Common Pleas, reiterating her PHRA-based discrimination claims. The District countered through preliminary objections and summary judgment motions that Appellant failed to exhaust her administrative remedies because her administrative complaint was untimely, thus depriving the trial court of jurisdiction. The trial court, however, declined to dismiss the case.

At the conclusion of a six-day bench trial, the District moved for the entry of a compulsory nonsuit, again arguing, *inter alia*, that the trial court lacked jurisdiction over

---

[1] Appellant also filed a complaint with the City of Philadelphia Police Department, which resulted in the arrest of the three perpetrators.

Appellant's PHRA-based claims because she failed to timely file her administrative complaint. Ultimately, the trial court granted the District's motion, concluding that Appellant's failure to timely file her administrative complaint with the Human Relations Commission deprived it of jurisdiction. Relevant to the instant matter, the trial court also concluded that neither the PHRA's equitable tolling provision contained in Section 962(e), nor the Minority Tolling Statute, applied to Appellant's administrative complaint. Appellant's post-trial motion to remove the nonsuit was denied. Thus, the trial court entered judgment in the District's favor.

Appellant appealed to the Commonwealth Court, asserting that N.B.'s status as a minor should have tolled the 180-day period for filing his administrative complaint with the Human Relations Commission pursuant to the PHRA's equitable tolling provision and the Minority Tolling Statute, allowing N.B. to file his administrative complaint with the Human Relations Commission after attaining the age of 18.

By way of brief background, the PHRA requires that any administrative complaint alleging unlawful discrimination be filed within 180 days after the alleged act of discrimination. 43 P.S. § 959(h). Furthermore, while an alleged victim of discrimination may bring an action in the court of common pleas for redress, he or she must first exhaust administrative remedies under the PHRA. *Id.* § 962(c)(1). Thus, typically, an alleged victim of unlawful discrimination must file a complaint with the Human Relations Commission, and do so within 180 days of the alleged discriminatory conduct. The PHRA, however, in Section 962(e), allows for the tolling of statutory time limitations based upon waiver, estoppel, and equitable tolling:

> The time limits for filing under any complaint or other pleading under this act shall be subject to waiver, estoppel and equitable tolling.

*Id.* § 962(e).

Similarly, the Minority Tolling Statute provides, in relevant part, that minority status shall not count as part of the limitations period:

> (a) General rule.--Except as otherwise provided by statute, insanity or imprisonment does not extend the time limited by this subchapter for the commencement of a matter.
>
> (b) Infancy.--
>
>> (1)(i) If an individual entitled to bring a civil action is an unemancipated minor at the time the cause of action accrues, the period of minority shall not be deemed a portion of the time period within which the action must be commenced. Such person shall have the same time for commencing an action after attaining majority as is allowed to others by the provisions of this subchapter.
>>
>> (ii) As used in this paragraph, the term "minor" shall mean any individual who has not yet attained 18 years of age.

42 Pa.C.S. § 5533.

In the instant matter, a three-judge panel of the Commonwealth Court affirmed in an unpublished memorandum opinion. *Nicole B. v. Sch. Dist. of Phila.*, 868 C.D. 2018 (Pa. Cmwlth. filed Dec. 17, 2018). Preliminarily, the court explained that, under 43 P.S. § 962(c)(1), an individual alleging discrimination may "bring an action in the courts of common pleas" for legal or equitable relief, but must first exhaust his or her administrative remedies under the Act. Relying upon *Vincent v. Fuller Co.*, 616 A.2d 969, 974 (Pa. 1992) ("By necessary implication, one who files a complaint with the [Human Relations Commission] that is later found to be untimely cannot be considered to have used the administrative procedures provided in the [PHRA]."), the court reasoned that Appellant was precluded from pursuing relief in court because she filed her administrative complaint more than two years after N.B. was sexually assaulted — well beyond the PHRA's 180-

day time limit. Thus, the court agreed that the trial court lacked jurisdiction to entertain Appellant's lawsuit.

Additionally, the court rejected Appellant's contention that Section 962(e) of the PHRA effectively tolls the time requirement for complaints filed by minors, explaining that administrative complaints filed beyond the 180-day window have been permitted in the past based on the doctrine of equitable tolling only "where the defendant actively misleads the plaintiff regarding the cause of action[;] where extraordinary circumstances prevent the plaintiff from asserting his rights[;] and where a plaintiff has asserted his rights in a timely fashion, but in the wrong forum." *Nicole B.*, 868 C.D. 2018, at 10 (citation omitted). The court noted that Appellant did not advance any of those justifications, and found that her supposition that N.B.'s status as a minor should trigger equitable tolling was without authority and conflated the concepts of equitable tolling and minority tolling, the latter of which the court found "does not toll the statute of limitations *unless* the legislature has expressly provided for minority tolling." *Id.* at 12 (emphasis original). The court explained that the doctrine of equitable tolling typically applies where a plaintiff was unaware of or unable to timely discover his tortious injury, or the cause therefor, through no fault of his own. The court observed that, here, Appellant learned of the harassment and of her son's injury as early as November 4, 2011, and was, thus, required to file her administrative complaint by May 2, 2012. The court concluded that Appellant's untimely administrative complaint could not be revived via equitable tolling.

The court likewise rejected Appellant's reliance upon the Minority Tolling Statute, surmising that it was bound by this Court's holdings in *Vincent*, *supra*, and *East v. WCAB*, 828 A.2d 1016 (Pa. 2003) (holding that Section 5533(b) does not apply to workers' compensation proceedings), and by the express language of Section 5533(b)(1) limiting its application to "civil action[s]." With respect to *East*, the court opined that this Court's

rationale barring application of Section 5533(b) to workers' compensation proceedings extended to other administrative forums, noting that it had previously relied upon *East's* holding in the context of a minor's untimely appeal from a Department of Public Welfare decision. *See V.S. v. Dep't of Pub. Welfare*, 131 A.3d 523, 534 (Pa. Cmwlth. 2015) ("It is evident that the General Assembly and the courts have deemed the Minor Tolling Statute applicable to matters in which a minor initiates a civil lawsuit in a court of record, and not those in which a minor is appealing from an administrative decision."). Moreover, the court viewed the legislature's decision to incorporate equitable tolling, but not minority tolling, into the PHRA as evidence that it did not intend for the 180-day time constraint to be tolled merely based upon a complainant's age. Ultimately, the court concluded that "[a]llowing [Appellant's] PHRA claims to proceed in the [t]rial [c]ourt, despite the untimely filing of her Administrative Complaint with the [Human Relations Commission], would contravene the PHRA's well-defined administrative procedures, as well as binding Supreme Court precedent." *Nicole B.*, 868 C.D. 2018, at 17.

We granted allowance of appeal to consider whether the PHRA's equitable tolling provision or the Minority Tolling Statute applies to an untimely complaint filed by a minor's parent with the Human Relations Commission. While we granted allocatur on two issues, our resolution of the first issue regarding the PHRA's equitable tolling provision is dispositive, and, thus, our focus is on that issue.

With respect to the question of equitable tolling, Appellant initially stresses that the PHRA instructs that its provisions are to be liberally construed. 43 P.S. § 962(e). Appellant argues that a complainant's minority status implicates the PHRA's equitable tolling provision, noting that equitable tolling is a flexible term which has been utilized in numerous scenarios where a party was unable to assert his right through no fault of its own, including due to incompetency, imprisonment, attorney misconduct, war, and filing

in the wrong venue. Moreover, Appellant submits that minority status has been recognized by numerous courts as a basis on which to equitably toll a statute of limitations in various contexts. *See* Appellant's Brief at 24 (citing, *inter alia*, *CTS Corp. v. Waldburger*, 573 U.S. 1, 17 (2014) (observing that 42 U.S.C. § 9658(b)(4)(B) "provides for equitable tolling 'for minor or incompetent plaintiff[s]'")).

Appellant asserts that the Commonwealth Court conflated equitable tolling with equitable estoppel by finding that only fraud or concealment could trigger tolling. She avers that "equitable tolling extends to circumstances outside both parties' control," whereas equitable estoppel prohibits "a defendant from enforcing a statute of limitation when its own deception prevented a reasonably diligent plaintiff from bringing a timely claim." *Id.* at 26 (quotation marks and citation omitted). Appellant suggests that the language of the PHRA acknowledges this distinction, as Section 962(e) states that complaints filed pursuant to the act are "subject to waiver, estoppel and equitable tolling." 43 P.S. § 962(e). Appellant opines that, rather than heed this differentiation, the Commonwealth Court overlooked the language, essentially rendering the terms "estoppel" and "equitable tolling" redundant, in contravention of principles of statutory interpretation. Thus, Appellant maintains that equitable tolling should apply under the PHRA due to a complainant's status as a minor to ensure that "equitable tolling" is afforded its distinct and intended meaning.[2]

---

[2] Several entities filed *amicus* briefs on behalf of Appellant. Pennsylvania Coalition Against Rape ("PCAR") focuses on situations involving sexual abuse, sexual harassment, and rape, and asserts that equitable tolling should apply herein because sexual assault of a minor "clearly presents extraordinary immobilizing circumstances," consistent with other types of equitable tolling scenarios. PCAR's Brief at 6. PCAR contends that it is "unjust in the face of these extraordinary circumstances to expect the Appellant to be aware of or comply with the procedures of the PHRA." *Id.* PCAR asserts the phenomenon of delayed reporting of sexual abuse amongst minor victims is compelling justification for applying equitable tolling to minors' claims under the PHRA. Likewise, *amicus* Education Law Center of Pennsylvania, *et al.*, ("ELCP") contends that minority

The District counters that equitable tolling is distinct from minority tolling and that equitable tolling cannot be based merely upon a litigant's status as a minor. The District emphasizes that seven years after the legislature enacted the Minority Tolling Statute, the PHRA was amended to subject limitation periods to "waiver, estoppel and equitable tolling," 43 P.S. § 962(e), but did not provide for minority tolling. According to the District, equitable tolling applies "when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action," and, more specifically, "when a litigant demonstrates that, despite the exercise of due diligence, she did not know of her injury or its cause." District's Brief at 39-40 (citations omitted). Again emphasizing that equitable tolling and minority tolling are distinct, the District claims that minority tolling applies only when the legislature expressly provides for it. It relies upon the legislature's express inclusion of equitable tolling in the PHRA, as well as its omission of minority tolling, as evidence the legislature intended time constraints to apply equally to minor complainants and adults.

Additionally, the District posits that the cases from other jurisdictions cited by Appellant do not negate what it asserts is the rule that minority tolling is not a basis for equitable tolling, but applies only when expressly provided by the legislature. For example, the District maintains that *Waldburger* is inapposite because Congress expressly provided for minority tolling under the federal environmental scheme at issue in that case, and the matter was not analyzed under equitable tolling principles. Similarly,

---

tolling should be found under the PHRA as minors have limited abilities to identify and address discrimination they experience. The ELCP adds that, even where a claimant is not a minor, sexual abuse has been found by courts to justify equitable tolling. Finally, *amicus* Council of Parent Attorneys and Advocates and Disability Rights Pennsylvania adds that the limitations period should be tolled for minors, as they are among the most vulnerable citizens of the Commonwealth and bias-based bullying constitutes a pervasive problem with severe consequences for its victims.

the District argues that other courts "loosely" referred to minority tolling as an equitable tolling concept. *Id.* at 44.

Furthermore, the District contends that Appellant failed to offer any cases that expressly stand for the notion that equitable tolling includes minority tolling, except a federal district court decision, *Albright v. Keystone Rural Health Center*, 320 F. Supp.2d 286, 290-91 (M.D. Pa. 2004), that was subsequently rejected in *Santos v. United States*, 559 F.3d 189, 197 (3d Cir. 2009). Moreover, the District avers that in *Zipes v. Trans World Airlines*, 455 U.S. 385 (1982), the United States Supreme Court held that the time requirements for filing a complaint with the Equal Opportunity Commission ("EEOC") under Title VII of the Civil Rights Act of 1964, §§ 2000e, *et seq.* ("Title VII") are subject to waiver, estoppel, and equitable tolling, but that federal courts have consistently declined to toll the time period based on a litigant's minor status under federal discrimination laws. *See, e.g.*, *Ashton v. Okosun*, 266 F. Supp.2d 399, 403 (D. Md. 2003) (declining to toll the statute of limitations under Title VII due to plaintiff's minority).

The District concludes that there is no basis for Appellant's position that equitable tolling includes a delay in the limitations period due to a claimant's status as a minor, and that "policy decisions regarding enactment and application of statute-of-limitations exceptions due to minority status are for the legislature to make, not the courts." District's Brief at 47.

Our analysis of whether the PHRA's equitable tolling provision applies to an otherwise untimely complaint filed by a minor's parent with the Human Relations Commission rests upon certain foundational concepts: the legal disability of minors; principles regarding statutory limitation periods; the jurisprudential doctrine of equitable

tolling; and the canons of statutory construction.[3][4]  We turn to a brief review of these precepts.

Initially, this appeal involves the right of a minor to bring a legal action.  Generally speaking, children have a distinct legal disability, as they are prohibited from personally bringing a cause of action before reaching the age of majority.  The underlying rationale of minority tolling is not to deprive minors of their rights, but to safeguard those rights during a period in which minors are viewed as being immature, inexperienced, and unable to independently protect them.  In Pennsylvania, as noted above, to safeguard certain minors' rights during their period of legal disability, the General Assembly has enacted the Minority Tolling Statute for minors bringing a "civil action," exempting children from the operation of statutes of limitations during their period of legal disability, and enabling them to bring a civil action on their own behalf upon reaching the age of majority.  42 Pa.C.S. § 5533.

---

[3] Our analysis involves a question of statutory interpretation which is a pure question of law.  Thus, our standard of review is *de novo,* and our scope of review is plenary.  *Buffalo Township v. Jones*, 813 A.2d 659, 664 n.4 (Pa. 2002).

[4] As an initial matter, the District argues that we should find Appellant's equitable tolling issue to be waived.  Specifically, the District asserts that Appellant failed to include it in her motion to remove nonsuit.  The District claims that, therein, Appellant solely argued the applicability of the Minority Tolling Statute, and neglected to assert that equitable tolling applied on the basis of her son's age.  In her reply brief, Appellant disputes the District's waiver assertion, first noting that the District never previously asserted waiver, opting, instead, to address the issue on the merits before the Commonwealth Court; thus, she contends that the District waived its waiver argument.  Appellant submits that, even if she failed to preserve her equitable tolling issue previously, the facts that the Commonwealth Court issued a decision on the merits, that this Court accepted review on the merits, that the parties briefed the issue on the merits, and that the issue is of statewide import, weigh in favor of merits review.  In any event, Appellant maintains that she advanced her equitable tolling argument consistently throughout the litigation, citing her response to the District's motion for summary judgment and her motion to remove nonsuit in support of that contention.  As it appears that the District failed to raise its waiver contention before the Commonwealth Court, and as we granted allocatur on this issue of first impression, we reject the District's request to find this issue to be waived.

Furthermore, in this appeal we are considering equitable modifications to the limitations period for filing a complaint. Generally speaking, statutes of limitations are rules of law that set time limits for bringing legal claims. They serve several purposes: imposing finality on the litigation system; providing defendants with an end to their potential liability; and avoiding litigation of disputes involving stale evidence. The obvious consequence of these statutes is the occasional harsh result of barring otherwise legitimate claims. Of particular relevance herein, statutes of limitations are generally binding upon minors. *Walker v. Mummert*, 146 A.2d 289, 290 (Pa. 1958) ("The settled rule is that infants, as well as all others, are bound by the provisions of [statutes of limitations].").

While a legislature's power to establish or alter a statute of limitations is well recognized, where statutory time limitations are not jurisdictional, principles of equitable tolling have been employed to ameliorate the harshness of limitation periods. Equitable tolling permits administrative agencies and courts to postpone application of statutory limitations for a period of time in certain appropriate circumstances. Indeed, it is hornbook law that limitations periods are "customarily subject to 'equitable tolling,'" *Irwin v. Department of Veteran Affairs*, 498 U.S. 89, 95 (1990), unless doing so would be "inconsistent with the text of the relevant statute," *United States v. Beggerly*, 524 U.S. 38, 48 (1998).

Finally, and perhaps most importantly, although not formally or in any detail argued by either party, our interpretation of the specific statutory language contained in the PHRA is guided by the precepts of the Statutory Construction Act, 1 Pa.C.S. §§ 1501-1991. Our General Assembly, unlike our federal counterpart, has dictated explicit considerations via the Act regarding how to discern its statutory intent. Pursuant to the Statutory Construction Act, the overriding object of all statutory interpretation and construction "is

to ascertain and effectuate the intention of the General Assembly" in enacting the statute under review.  1 Pa.C.S. § 1921(a).  If statutory language is "clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Id.* § 1921(b).  Thus, when the words of a statute have a plain and unambiguous meaning, it is this meaning which is the paramount indicator of legislative intent.

However, in situations where the words of a statute "are not explicit," the legislature's intent may be determined by considering any of the factors enumerated in Section 1921(c).  *DEP v. Cumberland Coal*, 102 A.3d 962, 975 (Pa. 2014).  These factors are:

> (1) The occasion and necessity for the statute.
>
> (2) The circumstances under which it was enacted.
>
> (3) The mischief to be remedied.
>
> (4) The object to be attained.
>
> (5) The former law, if any, including other statutes upon the same or similar subjects.
>
> (6) The consequences of a particular interpretation.
>
> (7) The contemporaneous legislative history.
>
> (8) Legislative and administrative interpretations of such statute.

1 Pa.C.S. § 1921(c).

With these background principles in hand, we turn to our analysis of the PHRA's equitable tolling provision.  The PHRA employs the phrase "equitable tolling" in two sections.  First, in Section 959, the General Assembly speaks of equitable tolling in broad terms:

> (a) Any person claiming to be aggrieved by an alleged unlawful discriminatory practice may make, sign and file with the Commission a verified complaint, in writing, which shall

state the name and address of the person, employer, labor organization or employment agency alleged to have committed the unlawful discriminatory practice complained of, and which shall set forth the particulars thereof and contain such other information as may be required by the Commission. Commission representatives shall not modify the substance of the complaint. *Whenever a person invokes the procedures set forth in this act, the Commission shall refuse to accept for filing a complaint it determines to be untimely with no grounds for equitable tolling, outside its jurisdiction or frivolous on its face.*

\* \* \* \*

(j) At any time after the filing of a complaint, *the Commission shall dismiss with prejudice a complaint which, in its opinion, is untimely with no grounds for equitable tolling, outside its jurisdiction or frivolous on its face.*

43 P.S. § 959 (a), (j) (emphasis added).  The PHRA also speaks in more specific terms in Section 962(e), allowing for the tolling of statutory time limitations based upon waiver, estoppel, and equitable tolling:

The time limits for filing under any complaint or other pleading under this act shall be subject to waiver, estoppel and equitable tolling.

*Id.* § 962(e).  Thus, the legislature has provided for equitable tolling in the PHRA in both general and specific terms.

Moreover, the timing of these enactments is instructive.  In 1991, the legislature amended Section 962 of the PHRA to add the specific principles of "waiver, estoppel and equitable tolling" with respect to an untimely complaint, and, yet, six years later, in 1997, employed only the broader catch-all phrase "equitable tolling" in Section 959.

If the legislature has defined a statutory term, we must, of course, employ that definition.  Indeed, it is axiomatic that, "if the General Assembly defines words that are used in a statute, those definitions are binding." *PUC v. Andrew Seder/The Times Leader*, 139 A.3d 165, 173 (Pa. 2016).  Here, however, the legislature has not defined the phrase

"equitable tolling," and, thus, we turn to consider whether there is a "common and approved" usage of this jurisprudential concept, 1 Pa.C.S. § 1903(a) ("Words and phrases shall be construed according to rules of grammar and according to their common and approved usage."), or whether the phrase is "not explicit," and, thus, requires consideration of the statutory construction factors listed above, *id.* § 1921(c).

Generally speaking, applying equitable tolling pauses the running of, or "tolls," a statute of limitations. *Dubose v. Quinlan*, 173 A.3d 634, 644 (Pa. 2017). Broadly stated, "[t]he doctrine of equitable tolling [extends] a statute of limitations when a party, through no fault of its own, is unable to assert its right in a timely manner." *DaimlerChrysler Corp. v. Commonwealth*, 885 A.2d 117, 119 n.5 (Pa. Cmwlth. 2005). Yet, equitable tolling is also a malleable, policy-driven concept taking into account principles of justice and fairness for both the party who seeks delay of the running of the limitations period and the party who is protected by the statute of limitations.

Equitable tolling has evolved as an "umbrella" concept, encompassing a variety of rationales for tolling a statute of limitations. *David v. Hall*, 318 F.3d 343, 345-46 (1st Cir. 2003) ("'Equitable tolling' is an umbrella term for the notion that a statute of limitations–unless its time limit is 'jurisdictional'–may be extended for equitable reasons not acknowledged in the statute creating the limitations period."). A broad array of situations have been deemed to fall within the concept of equitable tolling. These include fraud and concealment, *Deek Investment LP v. Murray*, 157 A.3d 491, 497 (Pa. Super. 2017); tolling permitted under the discovery rule, *O'Kelly v. Dawson*, 62 A.3d 414, 420 (Pa. Super. 2013) ("Equitable tolling is permitted under the discovery rule only when, despite the exercise of due diligence, the injured party is unable to know of the injury or its cause."); extraordinary circumstances where a plaintiff is prevented from asserting his rights, *Quest Diagnostics Venture, LLC v. Commonwealth of Pennsylvania*, 119 A.3d 406, 413 n.6 (Pa.

Cmwlth. 2018); and where a plaintiff asserts his rights in the wrong forum, *Uber v. Slippery Rock University of Pennsylvania*, 887 A.2d 362, 366 (Pa. Cmwlth. 2005) (determining that "under the principals of 'equitable tolling,' a claim filed beyond the 180-day time limit may be permitted where the defendant actively misleads the plaintiff regarding the cause of action; where extraordinary circumstances prevent the plaintiff from asserting his rights; and where a plaintiff has asserted his rights in a timely fashion, but in the wrong forum," citing *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1387 (3rd Cir. 1994) *abrogated on other grounds by Rotkiske v. Klemm*, 890 F.3d 422, 428 (3d Cir. 2018) (en banc), *aff'd* ___ U.S. ___, 140 S. Ct. 355 (2019)).

Indeed, the citation by the Commonwealth Court in *Uber* to *Oshiver* is instructive, as that decision makes clear that the doctrine of equitable tolling encompasses three, non-exclusive, situations:

> We preface our analysis of the equitable tolling doctrine with the observation that the time limitations set forth in Title VII are not jurisdictional. *See Hart v. J.T. Baker Chemical Co.,* 598 F.2d 829, 831 (3d Cir.1979). These time limitations are analogous to a statute of limitations and are, therefore, subject to equitable modifications, such as tolling. *Id.* Such treatment of Title VII's time limitation provisions is in keeping with our goal of interpreting humanitarian legislation in a humane and commonsensical manner so as to prevent unnecessarily harsh results in particular cases. *Id.*
>
> * * *
>
> Equitable tolling functions to stop the statute of limitations from running where the claim's accrual date has already passed. *Cada,* 920 F.2d at 450. We have instructed that there are three principal, though not exclusive, situations in which equitable tolling may be appropriate: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum. *School District of City of Allentown v. Marshall,* 657 F.2d 16, 19–20 (3d Cir.1981) (*quoting Smith v.*

> *American President Lines, Ltd.,* 571 F.2d 102, 109 (2d
> Cir.1978)); *see also Miller v. Beneficial Management Corp.,*
> 977 F.2d 834, 845 (3d Cir.1992) (citation omitted).

*Oshiver,* 38 F.3d at 1387.[5]

Not only has the doctrine been characterized as encompassing various circumstances, it has been used in imprecise fashion. *See, e.g., Schaffer v. Littion Loan Servicing, LP*, 2008 WL 9758641 *7 n. 62 (C.D. Cal. 2008) (explaining the closely related but distinct nature of equitable estoppel – sometimes referred to as fraudulent concealment – and equitable tolling, recognizing confusion as to the concepts and terminology, and observing that, due to the justifiable confusion regarding terminology, fraudulent concealment falls under the broad umbrella of "equitable tolling," citing *Thorman v. American Seafoods Co.*, 421 F.3d 1090, 1096 (9th Cir. 2005)).

Finally, and most directly relevant to our inquiry, the concept has been described both to include and exclude minority status as a basis for tolling a limitations period. *Compare D.K. v. Abington School District*, 696 F.3d 233, 248 (3d Cir. 2012) (acknowledging that equitable tolling may include concept of minority tolling); *Lafage v. Jani*, 766 A.2d 1066, 1073 (N.J. 2001) (noting lack of uniformity in decisional law with respect to equitable tolling for minors, and applying minority equitable tolling to New Jersey Wrongful Death Act); *Albright*, 320 F. Supp.2d at 294 (equitable tolling includes minority tolling and applies to claims under Federal Tort Claims Act); *Zavala ex rel. Ruiz*

---

[5] See also *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 151 (1984) (*per curiam*) ("This is not a case in which a claimant has received inadequate notice, *see Gates v. Georgia–Pacific Corp.*, 492 F.2d 292 (9th Cir. 1974); or where a motion for appointment of counsel is pending and equity would justify tolling the statutory period until the motion is acted upon, *see Harris v. Walgreen's Distribution Center*, 456 F.2d 588 (6th Cir. 1972); or where the court has led the plaintiff to believe that she had done everything required of her, *see Carlile v. South Routt School District RE 3–J*, 652 F.2d 981 (10th Cir. 1981); Nor is this a case where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction. *See Villasenor v. Lockheed Aircraft, Corp.*, 640 F.2d 207 (9th Cir. 1981).").

*v. United States*, 876 F.2d 780, 784 (9th Cir. 1989) (discussion of equitable tolling where minor is abandoned by his parents and/or guardians); *Caron v. Adams*, 638 A.2d 1073, 1079 (Conn. App. 1994) (equitable tolling where a minor is "a ward of the state without a next friend or guardian of his estate" or "has a guardian of his person with interests possibly adverse to his own,"); *Wimberly v. Gatch*, 635 So.2d 206, 217 (La. 1994) (tolling where cause of action arising from sexual abuse was not reasonably knowable by the plaintiff or her parents because of her minority) *with Booth v. United States*, 914 F.3d 1199, 1207 (9th Cir. 2019) (finding minority status does not merit equitable tolling under Federal Tort Claims Act); *Ashton*, 266 F. Supp.2d at 403 (declining to toll the statute of limitations under Title VII due to plaintiff's minority). Based upon the above, we find that there is no one "common and approved" usage of this jurisprudential concept. *See* 1 Pa.C.S. § 1903(a).

If a statutory term, when read in context with the overall statutory framework in which it appears, has at least two reasonable interpretations, then the term is ambiguous. *A.S. v. Pennsylvania State Police*, 143 A.3d 896, 906 (Pa. 2016). Here, various interpretations of the scope and meaning of the phrase "equitable tolling" exist, some including and some excluding the concept of minority tolling, and all of which are plausible. Because the phrase "equitable tolling" is not defined in the PHRA, and, as demonstrated above, because it constitutes an umbrella concept embracing various equitable situations, we find that the phrase "equitable tolling," as used in the PHRA, is "not explicit," and, therefore, is ambiguous. *McGrath v. Bureau of Professional & Occupational Affairs, State Board of Nursing*, 173 A.3d 656, 662 n.8 (Pa. 2017) ("[T]he 'not explicit' prerequisite [of 1 Pa.C.S. § 1921(c)] logically applies where ... *any* reading of the statute's plain text raises non-trivial interpretive difficulties." (emphasis original)). Hence, we turn to the statutory construction factors enumerated in Section 1921(c) of the

Statutory Construction Act to discern the General Assembly's intent as to the meaning of this phrase in the context of the PHRA.

Proceeding with these factors, we find "[t]he occasion and necessity for the statute," the "mischief to be remedied," and "the object to be attained," 1 Pa.C.S. §§ 1921(c)(1), (3), (4), to be particularly helpful in discerning the relevant legislative intent behind the meaning of the phrase "equitable tolling" in the PHRA. The PHRA was enacted to address and eliminate various forms of discriminatory practices in employment and places of public accommodation, based on race, color, familial status, religious creed, ancestry, handicap or disability, age, sex, national origin, and the use of a guide or support animal. 43 P.S. § 952. This civil rights legislation was enacted in 1955, during a period of great social unrest. Addressing the need for the protection of certain individuals, the legislature found that discrimination threatens the rights and privileges of the Commonwealth's citizens, promotes group conflict, injures the public health and welfare, and "undermines the foundations of a free democratic state." *Id.* § 952. As stressed in the PHRA:

> The denial of equal employment, housing and public accommodation opportunities because of such discrimination, and the consequent failure to utilize the productive capacities of individuals to their fullest extent, deprives large segments of the population of the Commonwealth of earnings necessary to maintain decent standards of living, necessitates their resort to public relief and intensifies group conflicts, thereby resulting in grave injury to the public health and welfare, compels many individuals to live in dwellings which are substandard, unhealthful and overcrowded, resulting in racial segregation in public schools and other community facilities, juvenile delinquency and other evils, thereby threatening the peace, health, safety and general welfare of the Commonwealth and its inhabitants.

*Id.* § 952(a).

The General Assembly's use of the broad phrase "equitable tolling" evinces an intent that this principle is to be employed in a manner consistent with the purposes of the statute. Indeed, we note that the PHRA contains an extremely short limitations period — 180 days — further supporting the view that the phrase "equitable tolling" should be broadly interpreted. Finally, we discern no fundamental policy underlying the PHRA which would dictate that we foreclose equitable tolling on the basis of minority status.

Thus, the primary purpose of the PHRA is to address, prevent, eliminate, and remedy unlawful discriminatory conduct. Denying minors the right to be heard by the Human Relations Commission, and to recover for wrongful discriminatory conduct, through an overly restrictive interpretation of the phrase "equitable tolling" would defeat the very purpose and policies upon which the PHRA is based, and, indeed, would severely undercut the protections of this humanitarian statute.

Similarly, we also find helpful a consideration of the consequences of a particular interpretation of the PHRA. 1 Pa.C.S. § 1921(c)(6). A finding that equitable tolling does not encompass minority tolling would forever bar many minors' claims of discrimination. Yet, our Commonwealth is at the forefront of protecting the rights of children. Barring minor's claims before they have the legal capacity to bring them conflicts with such protection. This conflict is partially resolved by allowing minors to bring claims through an adult representative. As a result, minors with a parent or guardian to represent them do not have to wait until reaching the age of majority to seek a remedy in court. However, while a parent or guardian may bring an action on behalf of the minor, such representation alone may be inadequate to protect a minor's rights because, as demonstrated by the instant case, an adult may fail to proceed within the express limitations period. As eloquently explained by the Honorable Frank Montemuro:

> Not all children have parents. . . . Appellee's proposition that
> the limitation is fair "as to minors and parents" cannot be

extended to assume that orphanages, foster parents, and juvenile homes have the emotional dedication to fight a prompt legal battle and to maintain the often slow progress through the court system. A foster mother may be honestly dedicated to hot meals and clean linen and emotional support yet quail at the thought of embarking on several years of legal battle for a member of her changeable brood. As to parents themselves, some are lazy or frightened or ignorant or religiously opposed to legal redress. Still, they have their remedy available to them if they choose to use it. A child does not. The situation comes to this: a personal property right belonging to a legally faultless citizen may and often has been forfeited because no legally competent party has volunteered to undertake an action in the child's behalf. By the time the child reaches maturity the property has vanished.

*DeSantis v. Yaw*, 434 A.2d 1273, 1276-77 (Pa. Super. 1981) (finding statute of limitations constitutional even though barring a minor's claim). Thus, where a parent or guardian fails or refuses to timely file a complaint before the Human Relations Commission on the minor's behalf, absent equitable tolling, the injured child would be forever deprived of the ability to seek civil relief. Simply stated, children, already some of our most vulnerable citizens, should not be subject to the whim or mercy of parents or guardians with respect to the assertion of their legal rights.

Furthermore, resort to equitable tolling for minors is particularly critical for certain populations of children, such as the homeless, youth whose parents are themselves minors, and children with disabilities or in foster care, who have special needs and who routinely do not have anyone serving as a "parent" to advocate on their behalf. Thus, an interpretation excluding minors from the doctrine of equitable tolling would be fatal to the rights of many children subjected to discrimination.

We recognize, as noted above, that statutes of limitations, while perhaps arbitrary and harsh, serve salutary purposes, including finality, ending a defendant's potential liability, and avoiding litigation using stale evidence. And, we acknowledge that to interpret equitable tolling to include minority tolling would negatively impact these

concerns.  Yet, while not insubstantial, we believe that the hardships which are concomitant with delayed litigation are far outweighed by the benefits of allowing the limitations period in which to file a complaint under the PHRA to be tolled until a child reaches the age of majority.

Critically, and transcending all aspects of our analysis, we note that the General Assembly has instructed that the PHRA "shall be construed liberally for the accomplishment of the purposes thereof, and any law inconsistent with any provisions hereof shall not apply."  43 P.S. § 962(a); *see also* 1 Pa.C.S. § 1928(c) (statutes "shall be liberally construed to effect their objects and to promote justice").  Consistent with the legislature's mandate, we have done so here.

Finally, we are unpersuaded by the District's argument that, because the Minority Tolling Statute was enacted prior to the PHRA's equitable tolling provision, the legislature would have expressly included minority tolling in the PHRA if it had intended age to toll the limitations period.  However, if, as found by the Commonwealth Court and asserted by the District, the Minority Tolling Statute applies only to "civil action[s]" – which do not include administrative proceedings – then it is eminently reasonable that the General Assembly intended to include minority tolling as part of the umbrella concept of equitable tolling.  While an express articulation would have been preferred, we are confident that construing equitable tolling to include tolling on the basis of minority status gives effect to the legislature's intent to protect all Pennsylvania citizens against unlawful discrimination.[6]

---

[6] We acknowledge that the limitations period contained in Title VII, another civil rights statute, has been interpreted by the United States Supreme Court to be subject to equitable considerations of waiver, estoppel, and equitable tolling, *Zipes*, 455 U.S. at 393, and that federal decisional law has generally held that the limitations period is not subject to tolling on the basis of minority.  We simply note that while we may consider federal decisions rendered under Title VII as instructive, such interpretation of a federal statute

In sum, we determine that the PHRA's equitable tolling provision is ambiguous, and, after consideration of the occasion and necessity for the PHRA, its goals and objects, and the consequences of including minority tolling as part of equitable tolling, we hold that, under its equitable tolling provision, the PHRA's limitation periods may be tolled during a child's period of minority. Like the Supreme Court of New Jersey in addressing its wrongful death statute in *Lafage*, *supra*, we do not believe that our legislature intended minority status to bar children who have suffered discrimination from seeking the protections and benefits of the PHRA:

> Although a literal reading of the Wrongful Death Act might suggest a different result, considerations of fairness and equity convince us that the true legislative intent is otherwise. The Legislature does not expect a child under the Wrongful Death Act "to understand or act upon his legal rights; he should not be made to suffer for failure to do so. Nor should he be penalized for the ignorance or neglect of his parents or guardian in failing to assert those rights." We are persuaded that to allow tolling for a minor's wrongful death claim poses no threat to the salutary purpose of the statute of limitations.

*Lafage*, 766 A.2d at 1073 (citation omitted).

Accordingly, the order of the Commonwealth Court is reversed, and the matter is remanded to that court for proceedings consistent with our decision today.

Jurisdiction relinquished.

Justices Baer, Dougherty and Mundy join the opinion.

Justice Wecht files a dissenting opinion in which Chief Justice Saylor and Justice Donohue join.

---

is not binding upon our Court's analysis of a Pennsylvania statute which pre-dated its federal counterpart. Our General Assembly has directed courts to engage in an independent analysis of the meaning of the PHRA, including its express application of equitable tolling and the mandate that it be liberally construed.